**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ROSA RUIZ-GONZÁLEZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

13-cv-1524 (MEL)

**OPINION AND ORDER**

## I. PROCEDURAL HISTORY

Rosa Ruiz-González ("plaintiff" or "claimant") was born on September 22, 1961 and has completed 10th grade. (Tr. 110; 137). Prior to her initial application for Social Security disability benefits, plaintiff worked as a school cook from February 1995 until March 2002. (Tr. 132). On October 3, 2003, plaintiff filed an application for Social Security disability benefits, alleging disability on the basis of depression, fibromyalgia, muscle spasms, pain and weakness in her hands, back, chest and shoulders. (Tr. 131). The alleged onset date of her disability was March 6, 2002, and the end of the disability insurance period was December 31, 2007. (Tr. 22). Plaintiff's application was denied initially on February 9, 2007 and the appeals counsel denied plaintiff's request for review on June 24, 2009. (Tr. 26-37). On August 24, 2009 claimant filed a social security complaint seeking review of the February 24, 2009 denial social security benefits. ECF No. 1 in case No. 09-1841 (MEL). On February 5, 2011 the court remanded the case for further proceedings, which instructions to the Commissioner to provide: (1) "a determination of whether plaintiff's diagnosis of fibromyalgia, either alone or in combination with plaintiff's other impairments, meets or medically equals one of the listed impairments in 20 C.F.R. Par 414,

Subpart P, Appendix 1, and – if not – for a determination of its effect of plaintiff's ability to perform past relevant work"; (2) "additional explanation or clarification of the ALJ's determinations regarding plaintiff's physical RFC"; (3) "additional explanation of clarification of the ALJ's determinations regarding plaintiff's depression"; and (4) a clarification of the record as to the physical and mental demands of plaintiff's past work as a school cook. ECF No. 19 in Case No. 09-1841 (MEL).

Pursuant to the remand order, a hearing before an Administrative Law Judge ("ALJ") was held, at which petitioner waived her right to appear and testify, but was represented by counsel. (Tr. 579). Id. Mr. David A. Festa, a vocational expert ("VE"), provided testimony via teleconference at the hearing. Id. On May 6, 2011, the ALJ rendered a decision granting plaintiff's claim in part and denying it in part, finding that she was not disabled prior to February 1, 2006, but became disabled on that date and continued to be disabled through the date of the decision. (Tr. 590-91). The Appeals Council denied plaintiff's request for review on May 8, 2013. (Tr. 546). As such, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). Id. On July 3, 2013, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that plaintiff was not disabled prior to February 1, 2006 was not based on substantial evidence. ECF No. 1, ¶¶ 2, 6. On March 17, 2014, defendant filed an answer and a certified transcript of the administrative record. ECF Nos. 7, 8. Both parties have submitted supporting memoranda of law. ECF Nos. 17, 18.

## II. STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a

whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520 (2012); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999). If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. If the ALJ concludes in steps one through four that the claimant's impairment or impairments are severe and do prevent him from performing past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

[1] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

Under steps one through four, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

## III. MEDICAL EVIDENCE SUMMARY[2]

The administrative record contains, *inter alia*, the following medical evidence regarding claimant's physical conditions:

Dr. Noemí Varela Rosario ("Dr. Varela"), who treated claimant from July 31, 2001 through May 7, 2002, reported that she suffered from an "ever present dull aching pain with acute episodes of intense pain once a week" in her lower back, right shoulder, and right arm, which radiated to her legs and neck. (Tr. 390-400.) She prescribed physical therapy. (Tr. 398.)

Plaintiff's primary treating physician is Dr. Freddie Quiñones ("Dr. Quiñones"), who treated plaintiff from 1995 through June 18, 2002, and from January 2004 through the end of the disability insurance period. (Tr. 401-03; 505-12.) On June 18, 2002, Dr. Quiñones diagnosed plaintiff with fibromyalgia, lower back pain, and heart disease.[3] (Tr. 401-03.)

Claimant was treated by Dr. Humberto Ramírez Lorenzo ("Dr. Ramírez") from April 2001 through May 2004. (Tr. 451-69.) On September 8, 2003 Dr. Ramírez diagnosed claimant with, among other things, fibromyalgia and carpal tunnel syndrome. (Tr. 451; 454.) Plaintiff's symptoms included lower back pain, pain in her hands, shoulders, knees and neck, and edema

[2] Plaintiff's social security appeal is confined to arguments regarding her physical impairments. Therefore, this section does not contain a summary of the evidence in the record regarding her mental health conditions.

[3] On October 2, 2006, after the date on which the ALJ found claimant was disabled, Dr. Quiñones reiterated the diagnosis of fibromyalgia and diagnosed her with rheumatoid arthritis, reporting that claimant suffered from generalized muscle pain, fatigue, dizziness, and limited movement of her upper and lower extremities. (Tr. 508.) He noted that she suffered from severe pain her upper and lower extremities, shoulders, and spine and that she had been treated with non-steroidal anti-inflammatory medications, steroids, and muscle relaxants and had received physical therapy, all without improvement to her condition. Id.

and rigidity in her hands, shoulders and neck. (Tr. 454.) In a May 18, 2004 RFC questionnaire, Dr. Ramírez indicated that plaintiff's symptoms included: multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent and severe headaches, numbness and tingling, anxiety, panic attacks, depression, carpal tunnel syndrome, and chronic fatigue syndrome. (Tr. 463.) Dr. Ramírez assessed that plaintiff could only rarely lift or carry objects weighing under ten pounds, could sit, stand or walk for 6 hours of an eight hour day, was unable to twist, stoop, crouch, or climb ladders, and could only occasionally climb stairs. (Tr. 465-66.) He opined that claimant has significant limitations in performing repetitive reaching, handling, or fingering. (Tr. 467.) In response to a question regarding the amount of time during an 8-hour working day that she can use her hands, fingers, and arms to grasp, turn, and twist objects, perform fine manipulations, and perform overhead reaching, Dr. Ramírez wrote the word "no" in all fields. Id. His RFC questionnaire indicates that the symptoms and limitations that he identified apply beginning on February 23, 2004. Id.

On February 5, 2004 Dr. Iris A. Acevedo Marty ("Dr. Acevedo") performed a consultative neurological evaluation of claimant. (Tr. 477.) Dr. Acevedo noted that claimant's history of fibromyalgia, cervical muscle spasms, and carpal tunnel syndrome in both hands and that claimant reported near constant pain and that her symptoms do not improve with medication. (Tr. 477.) Based on her examination of claimant Dr. Acevedo determined that claimant had the functional capacity to walk, sit, stand, hear, speak, and travel. (Tr. 479.)

On March 23, 2004, claimant's treating physician Dr. Osvaldo Rivera Marrero ("Dr. Rivera") completed a physical RFC assessment questionnaire regarding claimant's condition, which was affirmed by Dr. José H. Pesquera García ("Dr. Pesquera"). (Tr. 487-94.) He indicated that plaintiff had no manipulative limitations, such as reaching, handling, fingering, and feeling.

(Tr. 490.) In his RFC assessment he opined that claimant was able to stand or walk for about 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and engage in unlimited pushing and / or pulling, including operating hand and / or foot controls. (Tr. 488.)

Plaintiff was treated by rheumatologist Dr. Michael Babilonia Román ("Dr. Babilonia") from March 1999 through November 1999, and resumed treatment with Dr. Babilonia in July 2006. (Tr. 388-89; 515-16.) In an October 5, 2006 report, Dr. Babilonia diagnosed plaintiff with fibromyalgia.[4] (Tr. 516.)

At the administrative hearing held on April 13, 2011, Dr. German E. Malaret ("Dr. Malaret") testified as a medical expert. (Tr. 726-749.) Based on the medical evidence from the record, the ALJ asked Dr. Malaret several questions about claimant's residual functional capacity:

> Q: First, her maximum capacity to lift and carry weight.
>
> A: Based on her pain, she can lift and maybe carry ten pounds frequently, no more than that. She can lift 20 pounds occasionally, but not carry them. She also has postural limitations –
>
> Q: -- and --
>
> A: -- crawling, creeping, stooping, climbing ladders. All of that is going to be limited.
>
> Q: Very well.
>
> A: Repetitive movements with the hands and feet will be markedly limited due to the pain.

[4] On June 9, 2008, that is approximately six months after the end of the disability insurance period and over two years after the date on which the ALJ determined claimant became disabled, Dr. Babilonia performed an arthritis RFC assessment on claimant in which he identified that claimant exhibited signs of tenderness, crepitus, trigger points, muscle spasms, and impaired sleep. (Tr. 699.) Dr. Babilonia noted that claimant had moderate severe pain and that she experienced moderate relief with medication. (Tr. 699-700.) He indicated that she has significant limitations in engaging in repetitive reaching handling, or fingering, and estimated that she could sit for 2 hours before needing to get up and that she would be limited to 3 hours on grasping, turning, and twisting objects with her hands and 3 hours of fine manipulations using her fingers. (Tr. 702.)

> Q: So, based on that restriction of repetitive movements, in an eight-hour day, how many of those eight hours can she use her hands and feet for repetitive movement, would you say?
>
> A: Your Honor, that would be a matter of, in a total of eight hours, maybe she would be able to do that for one hour.
>
> Q: One hour?
>
> A: Yes, no more than that. Maybe two hours, depending on how severe her pain is, but certainly no more than that.
>
> Q: So, you are saying that she cannot use her hands for more than two hours in an eight-hour day?
>
> A: Correct; for repetitive movements.
>
> Q: Very well. This would refer to grabbing, handl[ing], touch[ing], things like that?
>
> A: Correct, Your Honor.
>
> Q: Very well. What about the capacity to sit?
>
> A: There is no limit on sitting.
>
> Q: To stand?
>
> A: I do not see any limitations on standing. According to the file, it all depends on the pain she is experiencing, naturally, and the same goes for walking. . . .

(Tr. 737-38.)

## IV. DISCUSSION

Claimant argues that the ALJ ignored substantial evidence in arriving at an RFC determination. ECF No. 17. Specifically, she claims that the ALJ erred in not including a functional limitation in her ability to engage in repetitive hand movements, as was identified by the medical expert Dr. Malaret. Id. at 17. As a result, she contends that the hypothetical question posed to the VE did not accurately reflect all of her relevant limitations, and thus the VE's testimony that she could perform unskilled, sedentary work as a clerk in the food and beverage

industry or as a "preparer" did not support the ALJ's finding that claimant was not disabled from March 6, 2002 through February 1, 2006. Id. at 18-20.

In reaching an RFC determination that claimant could perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the exception of complex tasks, the ALJ recounted the RFC findings of Dr. Rivera and Dr. Pesquera, noting that they opined that claimant was "able to lift and carry fifty (50) pounds occasionally and twenty five (25) pounds frequently, to sit and stand / walk for six hours in an eight hour work day, to push and pull (including the operation of hand and/or foot controls) normally with the upper and lower extremities and to otherwise function normally in activities not requiring frequent climbing, stopping or crawling . . . ." (Tr. 584.) The ALJ continued: "While the physical residual functional capacity from the State Agency internist and family physician find support in the longitudinal analysis of the evidence on the record as a whole, interpreting the evidence in the manner for [*sic*] favorable to her, in agreement with Dr. Malaret's testimony, the undersigned finds that the claimant has the physical residual functional capacity to perform sedentary work activity." (Tr. 584.) Based on this portion of the ALJ's opinion, claimant asserts that the ALJ was "in agreement" with Dr. Malaret, yet rendered an RFC finding that was inconsistent with Dr. Malaret's conclusion about claimant's RFC, which contained an additional limitation regarding her ability to engage in repetitive hand movements. This portion of the ALJ's decision as a whole, however, does not convey the ALJ's agreement with Dr. Malaret's testimony in its entirety. When read in conjunction with the ALJ's expression about the opinions of the State agency consultants, it appears that the ALJ intended to convey his agreement with Dr. Rivera and Dr. Pesquera's overall assessment of claimant's RFC, but that he concurred with Dr. Malaret's testimony that claimant could perform sedentary work.

The pertinent question, then, is whether the ALJ erred in adopting the finding of consulting physicians Dr. Rivera and Dr. Pesquera that claimant had the capacity to perform activities using her upper and lower extremities over Dr. Malaret's testimony that she could not engage in repetitive hand movements for more than 1 to 2 hours per 8-hour workday. As neither Dr. Rivera, Dr. Pesquera, nor Dr. Malaret were claimant's treating physicians, the ALJ is not obliged to give any of their opinions controlling weight in assessing plaintiff's RFC. See Polanco-Quiñones v. Astrue, 477 Fed.Appx. 745, 746 (1st Cir. 2012) ("[A] treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'") (quoting 20 C.F.R. § 404.1527(c)(2)). Instead, with regard to both State agency medical consultants, like Dr. Pesquera and Dr. Rivera, and medical experts, such as Dr. Malaret, the ALJ is not bound by their findings, but nonetheless must consider them. See 20 C.F.R. § 404.1527(e)(2).

The ALJ did consider Dr. Malaret's testimony, specifically acknowledging Dr. Malaret's opinion that as a result of claimant's generalized pain claimant had a functional restriction with regard to her ability to perform work activities requiring repetitive hand movements. (Tr. 584.) The ALJ chose, however, to credit the opinions of Dr. Rivera and Dr. Pesquera, who did not find claimant to be limited in her ability to use her extremities in the workplace. In crediting their opinions, the ALJ provided the rationale that their RFC assessment was supported by "the longitudinal analysis of the record as a whole." (Tr. 584.) Aside from her argument that the ALJ omitted the functional limitation in her ability to engage in repetitive hand movements found by Dr. Malaret despite being "in agreement" with his testimony, claimant does not assert that the ALJ's RFC assessment ignores substantial evidence in the record. Nevertheless, a review of the

medical evidence in the record related to claimant's physical condition reveals that although her treating physician Dr. Quiñones assessed that she suffered from limited movement of her upper and lower extremities and treating rheumatologist Dr. Babilonia opined that she could engage in repetitive hand movements for no more than 3 hours of an 8-hour workday, both assessments were made after February 1, 2006, the date on which the ALJ determined that claimant became disabled. The record is not completely devoid of evidence that plaintiff had a functional limitation regarding the performance of repetitive hand movements during the period in question: it contains Dr. Ramírez's RFC assessment completed on May 18, 2004, in which he opined that she has "*significant limitations* in doing *repetitive* reaching, handling or fingering," which began on February 23, 2004. (Tr. 467.) (emphasis in original). Although Dr. Ramírez did not provide a specific number of hours in which patient could engage in repetitive grasping, turning, or twisting of objects, fine manipulations, or overhead reaching during an 8-hour workday, a reasonable reading of the fact that he wrote "no" in each of these fields is that in his professional opinion she could not perform these activities on a repetitive basis in a work setting.

In declining to give controlling weight to the opinions of claimant's treating physicians, the first reason the ALJ provided is that they "essentially consist of medical reports without regular progress notes." (Tr. 582.) However, the ALJ acknowledged that unlike with regard to the assessments of the other three treating physicians, the record did in fact contain progress notes from Dr. Ramírez, dated from October 2003 through February 18, 2004. (Tr. 451-69; 582). Thus, the lack of progress notes rationale is not applicable in discounting Dr. Ramírez's opinion regarding claimant's RFC, particularly because he treated claimant on a regular basis a few months prior to completing the questionnaire.

The second explanation given by the ALJ for rejecting the "markedly restricted" RFC reported by Dr. Ramírez is that it is not supported by the clinical signs he reported, or by other clinical signs contained within the record. (Tr. 583.) There is a consensus among claimant's treating physicians Dr. Quiñones, Dr. Ramírez, and Dr. Babilonia that claimant suffered from fibromyalgia, and the ALJ also made a finding that claimant suffers from fibromyalgia. (Tr. 581.) As the First Circuit has noted, a "lack of objective findings to substantiate [a claimant's condition] . . . is what can be expected in fibromyalgia cases." Johnson v. Astrue, 338 Fed.Appx. 3, 7 (1st Cir. 2009) (finding that the ALJ failed to give good reasons for discounting a treating rheumatologist's RFC assessment of a fibromyalgia patient); see also Strother v. Astrue, No. 09-CV-30122-MAP, 2011 WL 808873, at *6 (D. Mass. Mar. 2, 2011) ("[G]iven that Plaintiff unquestionably suffers from fibromyalgia, 'the ALJ *had no choice* but to conclude that the claimant suffered from the symptoms usually associated with such condition . . . .'") (citing Johnson v. Astrue, 338 Fed.Appx. at 8) (emphasis in original). "Further, "[t]he musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities." Id (citing Harrison's Principles of Internal Medicine, at 2056 (16th ed. 2005)). In his RFC assessment, Dr. Ramírez indicated that in addition to widespread, severe pain, one of claimant's symptoms was "[m]ultiple tender points." (Tr. 463-64.) "Since trigger [i.e tender] points *are* the only 'objective' signs of fibromyalgia, the ALJ 'effectively [was] requiring evidence beyond clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines,' and this . . . was error." Johnson, 338 Fed.Appx. at 6 (emphasis in original) (citing Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003); see also Strother v. Astrue, No. 09-CV-30122-MAP, 2011 WL 808873, at *5-6.

As Dr. Ramírez did submit treatment notes in support of his RFC questionnaire and because additional clinical findings beyond those reported by Dr. Ramírez do not normally accompany a diagnosis of fibromyalgia, the ALJ erred in disregarding Dr. Ramírez's opinion that beginning on February 23, 2004 claimant was functionally limited in her ability to perform repetitive hand movements. Accordingly, for the period between February 24, 2004 and February 1, 2006 the hypothetical question posed to the VE did not contain all of claimant's relevant functional limitations. Furthermore, on cross-examination the VE was asked: "To add to the hypothetical posed by the honorable [ALJ], if I may add that the claimant is limited to no more than three hours of using her hands, fingers, and arms for repetitive movements in a total of an eight-hour work day, would she be able to perform any other jobs that you mentioned or any job in the national economy?" (Tr. 753.) The VE replied: "If they are limited to only three hours I would say no because they are unskilled and sedentary, I would say, there are no jobs." Id. This testimony of the VE supports the proposition that with the addition of the functional limitation in claimant's ability to engage in repetitive hand movements, for which the ALJ did not provide a good reason to discount, the claimant was disabled within the meaning of the Act. Thus, for the period between February 23, 2004, when Dr. Ramírez opined that the limitations he reported commenced, and February 1, 2006, when the ALJ determined that claimant became disabled, the decision of the ALJ is hereby vacated.

## V. CONCLUSION

Overall, in arriving at his RFC determination the ALJ considered the physical evidence in the record from each of claimant's four treating physicians, from the State agency consultants, and from medical expert Dr. Malaret. Although the ALJ's RFC determination conflicts somewhat with that of Dr. Malaret, the ALJ was not bound to accept Dr. Malaret's opinion in full, but was required to give good reasons for declining to give controlling weight to the

opinions of claimant's treating physicians. Three of claimant's treating physicians, Dr. Quiñones, Dr. Ramírez, and Dr. Babilonia, however, each also assessed a functional limitation in claimant's ability to perform repetitive hand movements. While the opinions of Dr. Quiñones and Dr. Babilonia were rendered after the time period presently at issue, March 6, 2002 through February 1, 2006, Dr. Ramírez's opinion that she suffers from substantial limitations in this area was issued on May 18, 2004, and applies to the period beginning February 23, 2004. As the ALJ did not provide good reasons for rejecting the restricted RFC finding made by Dr. Ramírez, his opinion is owed controlling weight. Taking into account the limitation in claimant's ability to carry out repetitive hand movements as found by Dr. Ramírez, the VE's testimony indicates that there are no jobs that she would be able to perform, rendering her disabled. Thus, she is entitled to disability insurance benefits for the period between February 23, 2004 and February 1, 2006.

Based on the foregoing analysis, the Commissioner's decision is hereby **AFFIRMED IN PART** and **VACATED IN PART**. As there is no indication that the ALJ ignored substantial evidence in reaching his RFC determination as to claimant's function capacity prior to February 23, 2004, the ALJ's finding that claimant was not disabled between March 6, 2002 and February 23, 2004 is affirmed. The portion of the ALJ's decision finding that claimant was not disabled between February 23, 2004 and February 1, 2006 is vacated, and the Commissioner shall award her disability insurance benefits for that period, accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of December, 2014.

s/ Marcos E. López
United States Magistrate Judge